UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMRISH RAJAGOPALAN, on behalf of
himself and all others similarly situated,

                  Plaintiff,

        v.

NOTEWORLD, LLC,

                  Defendant.

CASE NO. C11-05574BHS

ORDER DENYING MOTION TO
STAY LITIGATION AND
COMPEL ARBITRATION

This matter comes before the Court on Defendant's Motion (A) to Stay Litigation
and Compel Arbitration or, in the Alternative, (B) to Dismiss Without Prejudice, with
Included Memorandum of Law (Dkt. 14). The Court has considered the pleadings filed in
support of, and in opposition to, the motion and the remainder of the file.  For reasons
stated herein, the Court denies the motion.

## I. PROCEDURAL HISTORY

On July 26, 2011, Plaintiff Amrish Rajagopalan ("Plaintiff") filed this action
against Defendant NoteWorld, LLC ("NoteWorld"), on behalf of himself and all others
similarly situated.  Dkt. 1.  On October 5, 2011, NoteWorld filed the instant motion to

dismiss or stay litigation and compel arbitration. Dkt. 14. On November 14, 2011, Plaintiff responded. Dkt. 15. On December 2, 2011, NoteWorld replied. Dkt. 26.

## II. FACTUAL BACKGROUND

This matter involves claims arising out of services that Plaintiff enlisted of a company called First Rate Debt Solutions ("First Rate") to help him settle more than $15,000 in consumer debt that Plaintiff had accumulated over several years. Dkt. 1 at 17-18; Dkt. 14 at 1. Plaintiff claims that he found First Rate on the Internet after costs related to educational pursuits combined with a loss of job caused him to fall behind on credit card payments. Dkt. 1 at 17.

In his complaint, Plaintiff alleges that he agreed to sign up with First Rate after a company representative assured him that First Rate would "effectively and efficiently" help him settle his debts. *Id*. Plaintiff contends that the First Rate representative spent "under two minutes" explaining the prospective relationship between the parties; that the representative led him to believe that the contract was a single agreement between Plaintiff and First Rate; and that the fees would not exceed $2,000. *Id*. Allegedly relying on these representations, Plaintiff electronically signed the contract documentation (collectively, "Contract") on May 14, 2010. *Id*. at 16-17.

The 13-page Contract included, among other things, a "Software Subscription Agreement," which was a purported agreement between Plaintiff and a company called Expert Settlement Professionals, selling Plaintiff "an automated personal debt settlement system which is backed by FBL Associates, PC, law firm." *Id*. at 18; Dkt. 1-1 at 3. The Software Subscription Agreement contained an arbitration provision, which read:

10. Legal Disputes. In the event of any litigation arising out of or relating to this Agreement, all parties, including Client, P&E Solutions agree to resolve the dispute with neutral binding arbitration, according to the laws of the State of Florida. Venue for all arbitrations shall be in Broward County. This Agreement represents the entire Agreement by and between the parties. All prior oral agreements or written understandings are deemed merged herein. This Agreement may not be amended except by a written document signed by each of the parties hereto.

*Id*. at 4.

The Contract also included a "Sign-Up Agreement" that listed NoteWorld as an "independent third party" in the business of "providing transaction management and processing services and certain related services." *Id*. at 18; Dkt. 1-1 at 5. The Sign-Up Agreement "appointed and authorized" NoteWorld to provide services "related to the Customer's contract with their Software Provider," which the Sign-Up Agreement listed as P&E Solutions, a company that Plaintiff claims he had never heard of prior to entering the Contract. *Id*. The Sign-Up Agreement did not contain an arbitration clause. *See id*.

The remainder of the Contract included an Automatic Withdrawal Form, under which Plaintiff authorized a company called Global Logistics Enterprise, Inc. to process periodic withdrawals from his bank account to cover costs related to incoming collection calls. Dkt. 1-1 at 7-10. Plaintiff also authorized the withdrawal of bank funds for separate service-related costs. *Id*. at 10. In addition, Plaintiff submitted a financial hardship letter and provided a listing of creditors. *Id*. at 11-12. Finally, Plaintiff signed an agreement with FBL Associates, PC, for purposes of retaining an attorney. *Id*. at 13.

# III. DISCUSSION

## A.    The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The purpose of the FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). To that end, the FAA divests courts of their discretion and requires courts to resolve any doubts in favor of compelling arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). The FAA requires courts to stay proceedings when an issue before the court can be referred to arbitration. 9 U.S.C. § 3. On review of a motion to compel arbitration, the court's role is limited to a determination of (1) whether the parties entered into a valid agreement to arbitrate, and if so, (2) whether the present claims fall within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Notwithstanding the FAA's presumption in favor of arbitrability, a court may consider generally applicable state law contract defenses – e.g., fraud, unconscionability, and duress – in determining whether an arbitration provision is valid. *See* 9 U.S.C. § 2; *Rent-a-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## B.    Enforceability of the Arbitration Clause

In its motion, NoteWorld asks the Court to enforce the arbitration clause contained in the Software Subscription Agreement.  Dkt. 14 at 3.  In opposition, Plaintiff does not dispute that an arbitration clause exists, but instead questions its validity on grounds that it (1) was obtained by fraud; (2) is procedurally unconscionable; and/or (3) is substantively unconscionable.  Dkt. 15 at 7-8.

### 1.    Fraud

As a threshold matter, NoteWorld contends that Plaintiff's argument that the Contract was obtained by fraud relates to the validity of the Contract as a whole and, therefore, is best referred to the arbitrator.  Dkt. 26 at 11-12.  The Court agrees.  In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), the Supreme Court explained that where a party claims that the arbitration clause itself was induced by fraud, a federal court may proceed to adjudicate it.  *Id*. at 403-04 (citation omitted).  "But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."  *Id*. at 404.  Here, Plaintiff admits that he "believes that the [Contract] *in its entirety* is void as fraudulent."  Dkt. 15 at 26 n.8 (emphasis added).  Plaintiff has failed to allege facts that distinguish between the contention that Plaintiff was fraudulently induced into entering the arbitration clause specifically from the more general claim that the Contract, as a whole, was fraudulently obtained.  Accordingly, the Court finds that an arbitrator must determine whether the Contract is voidable for alleged fraud.

## 2. Procedural Unconscionability

Likewise, NoteWorld argues that an arbitrator, and not this Court, should address Plaintiff's procedural unconscionability argument on grounds that it relates to the Contract as a whole. Dkt. 26 at 8.[1] But, unlike the fraud challenge, the Court finds that Plaintiff's procedural unconscionability challenge focuses on the validity of the arbitration clause alone, separate from the facts purporting to support Plaintiff's claims under the Racketeering Influenced and Corrupt Organizations Act, Washington Debt Adjusting Act, Washington Consumer Protection Act ("CPA"), and common law. Essentially, in its response,[2] Plaintiff argues that the parties did not mutually agree on the arbitration provision and, even so, the arbitration clause is "incoherent and virtually unintelligible." Dkt. 16 at 17-18. For example, Plaintiff contends that the representative at issue "never mentioned an arbitration provision as he whisked Plaintiff through the [Contract] documentation, and his hasty presentation prevented Plaintiff from discovering the arbitration provision on his own or having any 'reasonable opportunity' to read the terms he was signing." *Id*. at 17. Moreover, Plaintiff argues that, even if he had been able to review the arbitration clause, neither he nor any other reasonable customer would

---

[1] *Compare Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("because [the plaintiffs] challenge[d] the Agreement, but not specifically its arbitration provisions, those provisions [we]re enforceable apart from the remainder of the contract") *to Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000-01 (9th Cir. 2010) (holding that because the party had marshaled specific challenges against an arbitration clause, the district court properly decided the issue of whether the clause was valid).

[2] *See Bridge Fund*, 622 F.3d at 1001-02 (noting that, to challenge an arbitration clause, a plaintiff need not raise the challenge as a separate claim in the complaint, but can rely on pleadings resisting a motion to compel arbitration).

have understood the terms, including the implicit waivers contained therein. *Id.* at 18. Because Plaintiff has articulated arguments that the arbitration clause is unenforceable on procedural unconscionability grounds – for reasons independent of why the remainder of the Contract might be invalid – the Court concludes that the question of whether the arbitration clause is procedurally unconscionable is properly before this Court.

That said, the Court finds that the arbitration clause is not procedurally unconscionable. Although Plaintiff contends that the First Rate representative explained the Contract in less than two minutes, during which he failed to mention the arbitration clause; and that the term "arbitrator" is used throughout the Contract "in ways that do not comport with ordinary English language," Dkt. 1 at 17; Dkt. 15 at 17-18, Plaintiff's declaration also provides context that causes the Court to conclude that Plaintiff had a reasonable opportunity to review the arbitration clause and assent to the terms. Plaintiff admits that he had two or three phone calls with the First Rate representative, and that he had a chance to review a link to the Contract before signing. Dkt. 17 at 2-3. During one of those calls, Plaintiff states that the First Rate representative tried to convince him to sign up for a three-year program, but that ultimately the parties negotiated a one-year term. *Id.* at 2. Subsequently, after entering into the Contract, it appears that Plaintiff had at least a ten-day opportunity to cancel the Contract before making the first payment, and that he made eleven monthly payments under the Contract without challenging the arbitration clause. *Id.*; Dkt. 26 at 9. Under these circumstances, the Court finds that Plaintiff was actively engaged and had adequate opportunity to review the terms. And while the Court acknowledges that the term "arbitrator" is interspersed throughout the

1  Contract in a manner that could confuse some consumers as to its meaning, the Court

2  finds that the arbitration provision, which is set apart in Paragraph 10 of the Software

3  Subscription Agreement, is not, by itself, confusing so to render that provision

4  unconscionable.  Dkt. 1-1 at 4.  Indeed, the Court is not aware of any authority that

5  requires a party in the position of the First Rate representative to inform a prospective

6  contracting party of the significance of every line-item of a contract, including, in this

7  instance, an arbitration clause.  Based on the foregoing, the Court finds that the manner in

8  which Plaintiff entered into the arbitration clause does not arise to "oppression" or

9  "surprise" so as to justify invaliding the arbitration clause on procedural

10  unconscionability grounds.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th

11  Cir. 2006).[3]

12  **3.        Substantive Unconscionability**

13        Plaintiff also argues that the arbitration clause is substantively unconscionable

14  because (1) by selecting the venue for arbitration as Broward County, Florida, the

15  arbitration agreement denies Plaintiff, a resident of Raleigh, North Carolina, a forum to

16  effectively vindicate his claims; and (2) the requirement that the arbitration take place in

17  Florida under Florida law violates Washington State public policy.  Dkt. 15 at 19-20.

18  The Court is not persuaded by Plaintiff's argument that a forum in Broward County,

19

20        [3] *See also Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 898 (2001) (procedural
   unconscionability involves the lack of a meaningful choice considering all of the circumstances
   surrounding a transaction); *Smith v. Legal Helpers Debt Resolution*, Case No. 11-cv-05054-RJB,
21  Dkt. 95, at 10 (W.D. Wash. Oct. 24, 2011) (Procedural unconscionability relates to "impropriety
   during the process of forming a contract … [and] involves blatant unfairness in the bargaining
22  process and a lack of meaningful choice.").

Florida – a mere 800 miles away from Plaintiff's residence – would be more costly than one in Tacoma, Washington, located more than 2,700 miles away from Plaintiff's home. *See* Dkt. 15 at 19-20.[4]  Plaintiff elected to file suit in a distant forum, and the Court rejects his efforts to defeat this motion based on the purported inconvenience of travel.

Nevertheless, the Court must look at the totality of the circumstances to determine whether the arbitration clause is "one-sided and overly harsh."   *Nelson v. McGoldrick*, 127 Wn.2d 124, 131 (1995) (citations omitted); *see also Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1183 (W.D. Wash. 2002). On that review, the Court must account for the apparent disparities in sophistication between the parties, which are exacerbated in the case of financially strapped consumers, such as the Plaintiff, seeking relief from mounting debt.  The Court cannot ignore that the arbitration provision at issue is contained in the Software Subscription Agreement to which NoteWorld is not a party; and notwithstanding that the provision refers to an agreement to arbitrate between "all parties," the Software Subscription Agreement does not mention NoteWorld nor does it define the "parties" with whom Plaintiff purportedly agreed to arbitrate.  Indeed, under other tactical circumstances, NoteWorld could just as credibly argue that it is not one of the "parties" referenced in the Software Subscription Agreement.[5]

---

[4] It is this fact of non-Washington residence that distinguishes this case from *Bradley v. Morgan Drexen, Inc.*, 2009 WL 2870508, (E.D. Wash. 2009) (unpublished) and *Wheeler v. NoteWorld*, Case No. 11-cv-00202-LRS (E.D. Wash. 2010).  In those cases, the plaintiffs were Washington residents who sought to maintain lawsuits in their home state.

[5] Although not determinative on the issue of whether the arbitration provision in the Software Subscription Agreement is substantively unconscionable, the Court notes that

Moreover, the Court finds that the validity of the arbitration clause is suspect because it potentially impairs a plaintiff's ability to bring suit to enforce consumer protection laws of Washington State. NoteWorld is a Washington corporation, which Plaintiff alleges has violated Washington's CPA and Debt Adjusting Act. Although Plaintiff is a resident of North Carolina, Plaintiff is not prohibited from asserting CPA claims against Washington corporations as a non-resident. *See Schnall v. AT&T Wireless Servs., Inc.*, 139 Wn. App. 280, 284 (2007); *Keithly v. Intelius, Inc.*, 2011 WL 2790471 at *1 (W.D. Wash. May 17, 2011). Washington State has a strong interest in enforcing its laws against its businesses, lest the state "become a harbor for businesses engaging in unscrupulous practices out of state." *Schnall v. AT&T Wireless, Servs., Inc.*, 171 Wn.2d 260, 287 (2011) (Sanders, J. dissent).[6] On this point, the Court notes that the arbitration clause calls for the application of Florida law, under which recovery of fees and costs

NoteWorld could have elected to include an arbitration provision in the Sign-Up Agreement, to which it is a party. It did not.

[6] In 2011, the Washington Supreme Court vacated a pertinent portion of its original opinion in *Schall v. AT&T Wireless, Inc.*, 168 Wn.2d 125, 142 (2010), in which the Washington Supreme Court initially held that the CPA was inapplicable to a transaction that did not have any effect on Washingtonians. In *Keithly*, Judge Lasnik explained as follows:

The Washington Supreme Court has withdrawn its original opinion in *Schnall v. AT&T Wireless Servs., Inc.*, and reissued an opinion that omits all discussion regarding the viability of a non-resident's CPA claim. *Schnall v. AT&T Wireless, Inc.*, [171 Wn.2d 260 (2011)]. The Court is therefore left with the previous law of Washington, which recognized CPA claims asserted by non-resident consumers against Washington corporations. *See Schnall v. AT&T Wireless Servs., Inc.*, 139 Wn. App. 280, 284 (2007); *McGinnis v. T-Mobile USA, Inc.*, 2008 WL 4772127 at *1 (W.D. Wash. Oct. 30, 2008); *Kelley v. Microsoft*, 251 F.R.D. 544, 552 (W.D. Wash. 2008). This interpretation of the statute is consistent with both the purpose of the CPA and the statutory language.

*Keithly*, 2011 WL 2790471 at *1.

would be left to the discretion of the arbitrator, contrary to what the Washington statutes at issue provide. For the foregoing reasons, the Court finds that the arbitration clause is substantively unconscionable.

**C.     Third-Party Beneficiary and Equitable Estoppel**

Even if the arbitration provision is not substantively unconscionable, and is therefore deemed valid, the Court finds that NoteWorld is not entitled to invoke the arbitration clause as a non-signatory.

First, NoteWorld is not a third-party beneficiary of the Contract. Although the arbitration provision at issue contemplates an agreement to arbitrate among "all parties," there is no evidence that Plaintiff intended to designate NoteWorld as a third-party beneficiary at the time that he entered the Contract, especially where Plaintiff claims that he only interacted with a representative of First Rate and had never previously heard of NoteWorld. Dkt. 1-1 at 4; *see Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 99 (1986) ("both contracting parties must intend that a third-party beneficiary contract be created"). This finding is further supported by the fact that the Sign-Up Agreement refers to NoteWorld as an "independent party" and appears to limit its services to the "terms and conditions" contained therein. Dkt. 1-1 at 5-6; *see also* Dkt. 17-1 at 2 ("NoteWorld takes [its] obligations as an independent third-party"). To be sure, Plaintiff claims that, to avoid liability, NoteWorld has previously tried (and in the future will try) to distance itself from First Rate and the Software Subscription Agreement. For example, in a letter dated April 14, 2011, NoteWorld makes clear the position that it "does not act as an agent for . . . nor does it take on any of the contractual obligations" of

First Rate. *Id.* Although the question on this motion is limited to a determination of arbitrability, and not of the underlying merits of the lawsuit, the Court cannot permit NoteWorld to claim intended benefit from the Software Subscription Agreement at this stage, only to disclaim any connection to that agreement when it is no longer strategically advantageous.

Second, the doctrine of equitable estoppel does not apply. The Court is not aware of an analogous case where a non-signatory defendant in NoteWorld's position has sought to enforce an arbitration agreement against a signatory plaintiff. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009) (declining to "extend[] the concept of equitable estoppels of third parties in an arbitration context beyond the very narrow confines delineated . . ."). Even so, the Court finds that the facts of this case do not compel the Court to depart from the general principle that "only those who have agreed to arbitrate are obliged to do so." *Id.* Although the complaint invites the Court to conduct some review of the contract documentation as a whole, including the Software Subscription Agreement, any review will be limited to the Court's evaluation of Plaintiff's claims under RICO and Washington State law. To resolve those claims, the Court need not interpret and examine in detail the provisions of the Software Subscription Agreement or otherwise enforce its terms. In fact, in light of Plaintiff's theory that the contract documentation is void, the complaint asks the Court to do just the opposite. In this context, the Court finds that NoteWorld may not invoke the arbitration provision under the doctrine of equitable estoppel.

1 **D.    Subsequent Motion to Dismiss**

2      As a part of its motion, NoteWorld moved to dismiss the complaint pursuant to

3 Rule 12(b)(1) and Rule 12(b)(3).  Because the Court denies the motion to compel

4 arbitration, the Court also denies NoteWorld's motion to dismiss.  In this circumstance,

5 the parties dispute whether NoteWorld may hereafter move to dismiss for failure to state

6 a claim under Rule 12(b)(6).  Dkt. 14 at 6; Dkt. 15 at 30; Dkt. 26 at 16.  The Court finds

7 that the plain language of Rule 12 prohibits NoteWorld from re-filing a motion to dismiss

8 under Rules 12(b)(2)-(5), but that it does not prohibit NoteWorld from filing a motion to

9 dismiss under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(g)(2)-(h).

10                          **IV. ORDER**

11      Therefore, it is hereby **ORDERED** that Defendant's Motion (A) to Stay Litigation

12 and Compel Arbitration or, in the Alternative, (B) to Dismiss Without Prejudice is

13 **DENIED**.

14      Dated this 6th day of March, 2012

15

16                                    _____

17                                    BENJAMIN H. SETTLE
                                     United States District Judge

18

19

20

21

22